Good morning, Your Honors. John Affel from Public Advocates for Plaintiff Appellants. And if you could keep your voice up, please. Very good. Can you hear me, Judge Nelson? Yes, I can. Thank you. I'd like to reserve five minutes for rebuttal. Do you have a clock that you can see? I do. No Child Left Behind is not working in California. The Act aims to close the achievement gap and seize, particularly among poor and minority students, teacher quality as the linchpin to doing that. It intends to raise the standards of teachers, to equitably distribute unqualified and qualified teachers, to disclose substandard teachers, and to put pressure to hold states and districts accountable for improving teacher quality. If you look at the charts that we brought here today, which is reprinted in our brief, Judge Nelson, the top chart shows that as the minority percentage increases in a school across the state, so too dramatically does its share of underprepared interns. The bottom chart conversely shows, and this is not in our briefs but is in the record, Judge Nelson, the bottom chart shows that as the achievement deciles are lower in the state, the share of intern teachers at those schools is dramatically higher. If we're wrong, there's no problem with either of those lines. If we are right, No Child Left Behind demands that those lines be flat and that teachers, underprepared intern teachers, be equitably distributed across the state without regard to race or socioeconomic status and that the achievement gap be closing. Mr. Affel, is your quarrel with the qualifications that the state has permitted through statutes  No. My main and really primary quarrel is with the regulation, the federal regulation that we are challenging. I understand what you're challenging, but what you're complaining about is the fact that the teachers are poor in schools that deserve better teachers. And my question is, aren't those teachers allowed to teach in California schools because they meet the certification requirements imposed by local school districts in the state of California? The certification requirements come from the state, not the school districts. Right. And you are challenging the federal regulation. So I won't hide the ball here. I'm very concerned about your lack of standing because of the fact that if we grant you the relief that you're asking for and we strike down the federal statute, these teachers are still qualified to teach under California law. And no relief that a federal court could grant you will change that fact. So I'd like you to address that, if you would, please. I will. Thank you. We are not trying to throw these teachers out of the schools. They are permitted to teach and authorize under state law. What we are trying to do is, first, truth in advertising. They are being labeled as highly qualified under numerous provisions of the federal act. As such, parents, like our plaintiff, Maribel Heredia, never gets the four-week letter saying, your son is being taught by a non-highly qualified teacher. The public doesn't get disclosure that these non-highly qualified teachers are out there. Judge Delfin, if I may interrupt on this same point. Even if the regulation is revoked, how would it have a coercive effect upon California to change? And nor would California suffer any adverse consequences if it does not change because 7910 State Department of Education could not tie federal funding for the state to teacher certification. So what difference does it make? How do you have a standing? Because if we knock this federal regulation out, then California is legally obligated to change their state regulations. The State Board of Education has passed regulations that say, you are highly qualified in this state if you have a full certification, a full credential, or if you're an intern. The or if you're an intern is only because of this reg that we're challenging. This outdoes the Bennett v. Speer case where all the Supreme Court said is you need to have, as you said, Judge, a legally coercive effect on the third party here in the state. They would be legally obligated to change their regulation and not call these people highly qualified. That's what I don't understand. Because, Judge, the state could no longer maintain its state regulation that calls interns highly qualified. And if they did not change that, we now have a new cause of action against the State Board of Ed under the State Administrative Procedure Act. We could sue them for having a regulation inconsistent with federal law, which requires full state certification for highly qualified teachers. Let me ask you a different question, but related to the foregoing questions. If this regulation is revoked and if it turns out that these so-called intern teachers are no longer highly qualified under the federal statute, does California then have an obligation under the No Child Left Behind Act to equalize the distribution of those interns among the various schools? That is absolutely right, Your Honor. So that graph then would change, and the so-called intern teachers who are no longer highly qualified under the No Child Left Behind, California would be required to distribute them evenly throughout their system? That is absolutely right. And they would require to change their plans to say, geez, we thought those guys were highly qualified. Now we have to figure out how to distribute them equitably, and we have to report to the public, and we have to send letters to parents that say your kid doesn't have a high quality. I think I understand some of that stuff. What bothers me is that, as a practical matter, the statute, if we read it in the way you want to, is essentially unworkable. That is to say, the numbers of teachers that are highly qualified under the definition you contend for, they simply don't exist. The statute, I think Congress recognized that there are going to be highly qualified teacher shortages for a while. Even though the statute specifically requires that every school be staffed entirely by highly qualified teachers by 2006, 2007? That's right. And they also The statute is asking you something that's impossible. Well, very difficult. Very difficult to achieve. And the statute also It's already passed, and it's not happened. It didn't happen. And the statute also asked that all kids be 100 percent proficient by 2014, and we're not on track to get there. I have to say that, I mean, I'm not myself an educator, but I've read around on the subject and partly connected with this case. The statute, by and large, is unworkable, and this is only one piece of it. Well, I think the reality of the statute, and it's implicit in Congress saying even after that deadline of 05, 06, or 06, 07, Congress still understood there are going to be these shortages. You still need to report. They still wanted to keep the pressure on and light a fire under states and districts to work towards 100 percent highly qualified. I think Congress knew they weren't going to get there in 05, 06, but the statute operates by public disclosure and public accountability on states and districts to keep working, and this regulation allows them to stop working on a very large chunk of underprepared teachers in California. Mr. Raffel, if we accept your, I'll call it more restrictive definition of highly qualified teacher, aren't you asking us to read out of 20 U.S.C. Section 7801A, little i, the clause including certification obtained through alternative routes to certification, which is in essence shorthand for interns or less than fully certified teachers? And I would say it unambiguously is not that, Your Honor. What is it? There's at least three reasons. There's no way to read that parenthetical as anything other than an illustration of full state certification. It is not a modification or an alteration or an expansion of that term. Grammatically, it is that parenthetical, as the Fourth Circuit said in Cabell Huntington Hospital, it's not a parenthetical, but a parenthetical. It can't change the operative terms of the statute. This parenthetical is in a subordinate clause. That means it's like saying all African animals, including zebras. Whatever follows including has to be a subset of an African animal. You could not say all African animals, including polder bears. But don't the state regulations currently permit less than traditionally qualified teachers to teach in these schools? Yes, but the state laws does not call them fully certified. The state law recognizes that they are not fully certified. But if I accept the answer that you just gave me, the parenthetical would seem to include, would it not, those who are certified through alternative routes to certification? No, I don't think it does. Because, but even if it does, let's say that it does, it still means that it's referring, in that case it would be referring to states where the state grants full certification to someone who's an alternate route participant. That's not the case in California, but that's how you could read that, because that would be a subset. It's different levels of certification, do they not? It does, but it is undisputed, Your Honor, that full certification only goes to preliminary, California only considers preliminary and professional clear credential holders to have full. That is undisputed. And the education department realizes that same definition. And the education department, in the record, at ER 61881, acknowledges these interns are provisional. So they would have you read that Provision 2 out of the Act. The Provision 2 there says the teacher hasn't had certification or licensure waived on emergency, temporary, provisional basis. They just said, if you're provisional, you're not highly qualified. But their reading is that they wrote this parenthetical that said, you have obtained full state certification, including provisional program participants. It is an untenable, illogical reading. But there's a specific exclusion from the statute for various temporary or emergency certifications. You're not arguing that they fall within the exclusion, or do you? They absolutely fall within the exclusion, and the department acknowledges that. How does that track, then, with the words of the exclusion? If you look at the Federal Register, where they explain what the words of the exclusion mean, they say that means no one is highly qualified if they have had certification waived on a provisional or temporary basis. Full state certification waived is what the Federal Register says. So they acknowledge that that exclusion. When you say Federal Register, is this part of the same regulation you're challenging? Yes. Yes. 680 and 81 in the excerpts of record. You're saying that the regulation is internally inconsistent? Yes. Clearly in violation of the statute, but internally inconsistent? Well, what they say is that they created one exception to that exclusion, and that one exception is alternate route participants. And we're saying they had no authority to create an exception to the full state certification standard. And they don't cite any. And it's not the parenthetical, because you don't follow that argument in light of the parenthetical. It seems to me, no matter how we cut it, you are reading that clause completely out of the statute. Let me tell you why I'm not. Another rule of grammar is that an initial modifier is applied to all subsequent nouns in the series. And if you mean a different modification, you need to use a different adjective. Full and state, we have two initial modifiers. Full and state applies to the two words certification in the parenthetical. So the way to read that is including full state certification obtained through alternative routes to full state certification. And if you look at the Federal Register site I just gave you at 680 and 81, they also read certification in provision two has not had certification or license or waived on a merge. They also read that certification to mean full state certification cannot be waived on a temporary provision. They fully understand that full and state apply to every use of the word certification in that statute. Okay. Now, you wanted to save five minutes. You've got 40 seconds left. Yes, sir. Why don't we hear from the other side? We'll make sure you get a chance to respond. Thank you. May it please the Court. I'm Lisa Klein for the Department of Education. If plaintiffs were right, Title I school districts in California could not hire Teach for America recruits or other alternative route participants. That is clearly wrong today, and it was clearly wrong in 2002 when the legislation was first enacted. When you say the legislation, you mean Teach for America? Working backwards, 2008, we have Congress coming in again and setting up a grant program for Teach for America, which Congress describes as the National Teacher Corps of Outstanding Recent College Graduates Who Commit to Teach for Two Years in Underserved Communities. Congress says that the point of this grant program is to provide highly qualified teachers to high-need local educational agencies in urban and rural communities, and it says highly qualified means the same thing it means in that definition of the No Child Left Behind Act. And is it clear that Congress considers these brand-new teachers right out of school without any certification program to be highly qualified, or they're on their way to becoming highly qualified? Well, it's clear from this that Congress understands what everyone else understands, which is the hallmark of the alternative route program is that the participants teach right away. They have pre-service training and they have ongoing supervision, but they go right into the classroom as full teachers. And Congress knew that they're going to underserved communities. This is by design. This is the purpose of the program. So this chart, it would be no surprise to Congress, that is what it is funding, because it regards these participants as part of the But Congress is making clear that it's encouraging alternative route programs, knowing full well that the participants teach from day one in low-income schools. Nelson, go ahead. I'm sorry. I didn't mean to interrupt. Doesn't the plain language of 7801, this is assuming the appellants do have a standing, doesn't the plain language of 7801 require us to quote, has obtained and full state certification, clearly contradict the government's regulation? No, Your Honor. And understand, I mean, the plaintiff's position would fail even without the regulation, but the way that regulation works in practice, and we've now had six years of experience under it, is that these are supposed to be real programs, not just long-term waivers, but programs where the participants are working towards another credential. It may vary from state to state and from district to district, and the terminology varies widely. Certification is not a magic word, and the states don't have to use it in their statutes, and they generally don't. But in practice, that's all that means. That this is not just a waiver of all the usual requirements, it's a real program. But a teacher who has obtained full state certification cannot be one who is, quote, participating or making progress toward full certification, can it? But what we know is that Congress expressly included teachers who are holding certification obtained through alternative routes, and that can't be... You just used the past tense, obtained. Judge Nelson's question, and it was mine, too, is what about people who are in the process of obtaining but have not yet obtained certification through the alternative process? No, but district interns, for example, they need to be issued a teaching credential from California in order to be able to teach. The fact that they may also be working towards another credential, and sometimes it might be the preliminary, sometimes it might be the professional clear, that doesn't mean they don't have enough certification under state law for them to be regarded as highly qualified under federal law, as long as they have subject matter competence and a BA. Because Congress left certification matters to the states, and in the provision that Judge Nelson quoted, expressly prohibits the Department of Education from micromanaging state certification policies. They can't withhold funds for failure to adopt a specific method of certification. That is a matter that's left to the states. So do they typically take some kind of a state exam, like we take the bar exam after we graduate from law school? Yes, Your Honor. We've cited the requirements in our brief, but there's, for example, the CBAS, the California Basic Education Skills Test. They have to take, they have to meet other requirements before they are issued the teaching credential, district internship teaching credential, that allows them to teach. So California, the word is credential, not certification, but this doesn't matter. Congress wasn't telling, Congress's point is we're not telling the states you have to have some magic words in your state education code. Alternative route participants are highly qualified, assuming the other requirements are also met. So these advanced credentials that you're talking about would be sort of the equivalent of master teacher, or I don't know if that's the right term, but something higher than the basic credential. It's an additional credential beyond the credential that allows them to go into the classroom on day one. Now, let me talk about these interns for a minute. Under California law, if someone is credentialed under the California law and is working toward, I guess I'll say a more credential. Yes. But they don't get it. What happens if they don't get that credential within, say, four years? What happens to them? Are they still allowed to teach in California schools? I'm sorry, under California law? I believe there are some provisions for extending credentials under certain circumstances, but again, we don't believe Congress intended the federal courts to get into this at all. But I'm asking a question that I think is awkward for you, because I think the answer is that if they're interns and they're in there teaching because they're in progress to getting some certification, but they then end up don't getting it, I don't think they get to teach anymore. Under California law. The one thing that's clear is California can define full certification however it wants. No, I don't think that's possible. It can't define full certification as somebody who's graduated from kindergarten is fully certified to teach high school. No, I should clarify. They need a B.A. and they need demonstrated subject matter confidence. Those are two separate requirements to be highly qualified under federal law. But what federal law does not do is say to a state, here's what your credentialing system has to look like. If California or any other state wanted to say all we require is a B.A. and subject matter confidence, and again, remember, nobody has a right to get a job then. All it's doing is widening the applicant pool. I want to come back to my question and make sure I give you as good a chance as you need to answer it. My understanding of these interns is that they're allowed to teach in the classroom under California law because they're in progress to getting some form of certification. My understanding further is that if they don't end up getting the certification that they're in the process of getting, there comes a point at which California says, you know what, you didn't get it, and we're not going to allow you to teach. Is that correct? Yes, that's correct. It has a term. So how can you say then that if California says, well, you never got it and therefore you can't teach at all, how can you say that they're fully qualified when they're in the process of getting something, which if they never get it, California kicks them out of the classroom? The same is true for the beginning teachers who hold the preliminary credential. That's valid for a five-year term. If they don't get the professional clear credential, they're no longer eligible to teach. But Federal law really doesn't make distinctions among the gradations of the various credentials in the 50 states. What Federal law says is... It sounds as though then that as long as the teacher satisfies, graduated from college and has some sort of a field of concentration that matches with what they're trying to teach, there is nothing in Federal law that requires the state to impose any higher requirement than that. That's correct, because as a practical matter, and this is, I'm quoting plaintiff's brief now, states are free to redefine in accordance with state law their certification requirements or create nontraditional approaches to certification. Congress doesn't set these standards. And just taking one step back from that... But the Federal statute is very oddly worded, because it doesn't say the state must have some... The only people they can allow in the classroom under our fully qualified definition is B.A. and subject matter qualification. They say in addition to that, they have to be fully qualified and fully certified. The statute is not written the way you tell me it's being written, because there's a lot of extra words in there. No, but it is also clear that the states have, under No Child Left Behind generally, an enormous amount of discretion. And actually, I was just going to sort of step back and explain why this is unsurprising, because the structure of the statute, not just the teacher provisions, the whole Title I program, is states get a lot of money and a lot of discretion. What they agree to show are results in the form of improvements of student achievement on their own tests each year. And if they don't make adequate yearly progress, and this is measured not just across the board, but also for subgroups like low-income students and students from racial minorities, if they don't do that, there are serious remedial consequences. So there is a built-in incentive for the state and its superintendents to be hiring the best teachers they think they can find. And for that reason, you don't need Congress dictating every little substandard requirement, and certainly the Department of Education is forbidden from doing that. If we end up disagreeing with you and agreeing with the other side that these interns under California law are not fully qualified under the no-child-left-behind federal statute, what happens? Well, it would be up to California, because even plaintiffs agree, even on their reading of California law, California could change its law and say, we decide that these interns are going to be treated as fully certified, and that's it. And so their prediction is that even though California has had these programs in place since 1974 and has clearly encouraged these internship programs and, you know, has placed them in high-need school districts, that if they were to knock out the regulation, that California, rather than just amending its law, you know, and I'm assuming all of their arguments, I'm assuming they're correct about California law, that California wouldn't just amend its law to say, no, of course we want to treat these teachers as fully certified and therefore highly qualified, because California has made clear in its statute it wants its Title I districts, its poor districts, to be able to hire these teachers. So is that your answer to my question to Mr. Affeldt on standing? Yes. That's our answer. That's why there's no standing. That any relief we could afford would essentially be ineffective. It's not coercive of California. You know, even assuming California accepts everything this Court says, even though it's not a party and a lot of what plaintiffs are asking the Court to address are matters of State law, but even assuming they took all that, all it would take is for them to amend their statute and say, we're calling our district interns and our university interns fully certified. They're done. They're fully in compliance, even on plaintiff's theory. And why didn't you make the standing argument in the district court? We made the argument that as we read the California Education Code, they are fully certified under California law. But just we think there's a good reason the district court didn't want to reach that argument, because on reflection, that's a very funny argument for a Federal court to be opining on, you know, the nuts and bolts of California Education Code, particularly in the absence of California. So we actually think the district court was right in understanding that it didn't need to decide that, because there's – well, the district court, of course, reached the merits. I don't think I understand why – I said, why didn't you make the standing argument in the district court? We did make a standing argument in district court. Did you? Yes. But what we said was these district interns are fully certified under the California Education Code. We parsed the code. But that seems strange to have, you know, inviting a Federal court to be parsing the California Education Code to tell California what to do. So we're not making the exact same standing argument on appeal, but we did make a standing argument below, and we're making a standing argument here. Okay. Unless the Court has further questions, I'll rest on our brief. Any further questions, Judge Nelson? No, thank you. Okay. Thank you. Thank you very much. Your Honor, the Federal-State relationship that she cites is really critical here. The No Child Left Behind Act states, you are going to establish rigorous academic content standards. You're going to get every kid – you're going to teach that to every kid. You're going to establish rigorous academic achievement standards. You're going to get every kid to proficiency. And on the teacher side, they did the same thing with full state certification. They left it up to states. They didn't tell them what content to establish or what proficiency. And they said, whatever you in your laws have decided is full state certification. You're going to give that to every kid. So that, it is anomalous to say that in the next breath, in a parenthetical, they were saying we're going to not defer to states on setting state certification policy. We're going to federalize the definition. I can't think of a topic that has historically been left to the states more clearly than education. I'd be hard-pressed to think of another example in the federal-state relationship. We don't dictate to local school districts how they conduct their operations. That's right. That's why the feds are saying you need to give your kids whatever you think your gold standard is. And let me just cite also to excerpts of record 709. I want to quote their pre-litigation interpretation of that parenthetical. And the Supreme Court's clear. You don't need to pay any attention to their post-litigation legal arguments from counsel. Look at what the agency said before they were sued. A highly qualified teacher is one who, quote, who has obtained full state certification, per in, whether he or she has achieved certification through traditional or alternate routes, close per in, close quote. They understand that that parenthetical is merely an illustration that, of course, you can use the traditional route to get it. Well, you've heard that argument already. Let me ask you a different question. How do you respond to what we just heard from the department, which is to say that if we agree with you and hold that the interns, as the credentialing is now structured in California, don't satisfy the highly qualified teacher requirement under this federal statute, the response is, well, all California has to do is just change its vocabulary and say they're fully certified and therefore then they satisfy the statute? I didn't respond to that. That's a non-response because that's a... Your response so far is a non-response, too. All right. Fair enough. They're giving you a hypothetical. I have a cause of action. As soon as you, if you strike it down the reg, California is immediately obligated to stop treating interns as highly qualified unless and until they change their statute. They're saying hypothetically they could. Well, I have standing... But could they take the people who are now interns with exactly the same degree of education and training that they now have? Could California, consistent with the federal statute, simply say these are qualified teachers, period, and would that then satisfy the federal statute? They have to say, they have to give those interns their preliminary credential because that is the full level of certification California uses for teachers with zero years of experience. And there's no higher level of certification, no less restricted certification than the preliminary. So California would have to give interns a preliminary... And if they did that, that would then satisfy the act? It would. However, I say... Even though there would be no change in the actual qualification of the person, as we would talk about qualification, all they've done is change the label. Yeah. But I say let's have at it because that, they're going to have to go to the legislature and say, we think interns who are right out of college, who have not had training on how to teach their subject matter, who have not had a mentor, master teacher sign off that this person knows how to teach and is not going to do harm to kids, is the same as someone who has completed their pedagogical training and had that master teacher sign off. I don't think that... We're ready to take that on in the legislature, and we don't think they could get it through. But that would happen in the light of day, and we'd have a public debate about it. This happens subterfuge through a regulation. They're called highly qualified by federal fiat, and that hasn't happened in the light of day, and it subverts the accountability processes in the act. Okay. I guess the one other thing I wanted to hit... You're four minutes over time, so why don't we give you one paragraph to wrap up. Okay. Even if you think the statute's ambiguous, this doesn't pass under Chevron 2. The act is about raising the standard of teachers, and there's no dispute that these interns are, as you noted, still learning how to teach. Your paragraph's getting longer. Okay. Two more points. No. No, no, I'm sorry. It's part of the... I'm just saying the act is about disclosing teacher qualifications. The regulation covers up teacher qualifications. The act is about equitably distributing, and the act permits inequitable. So it's not consistent with the statute, even under a Chevron 2 analysis. Okay. Thank you very much. Thank both sides for your helpful argument. And while I'm speaking only for myself, this is a difficult case. Rene versus Spelling. Spelling's now submitted for decision.
judges: Nelson, Fletcher, Tallman